UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| BERNIE RAY MCGILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16-cv-43 |
| | ) |
| KNOX COUNTY, TENNESSEE et al. | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This matter is before the Court on the Defendant James "J.J." Jones' Motion to Dismiss [doc. 14] and Plaintiff's Response in Opposition [doc. 19]. For the reasons herein, the Court will grant Defendant's motion.

### I. BACKGROUND

Plaintiff Bernie Ray McGill ("Mr. McGill") alleges that after serving a three-year sentence in a Tennessee state prison for felony and misdemeanor convictions, he was released but later re-arrested for driving under the influence. [Second Am. Compl., doc. 25, ¶¶ 26, 28]. While incarcerated in the Roger D. Wilson Detention Facility for driving under the influence, Mr. McGill received a recognizance bond, which entitled him to his release. [*Id.* ¶¶ 29–30; Answer, doc. 30, ¶ 30]. He claims, however, that an employee of the Knox County Sheriff's Office, Defendant Steven Patrick ("Mr. Patrick"), informed him that he would remain imprisoned because he had not served the full three-year sentence for his prior convictions and had been "erroneously released." [Second Am. Compl. ¶ 31; *see*

Answer ¶¶ 14, 31]. Although Mr. McGill maintains that he tried to explain to Mr. Patrick that he was mistaken, Mr. Patrick instructed the jail's staff to hold Mr. McGill without bond for 180 days. [Second Am. Compl. ¶ 35; Answer ¶ 35].

While jailed, Mr. McGill claims that he made numerous complaints that he was being unlawfully detained, both to the officers in Pod 3A where he was housed and through the prison's kiosk. [Second Am. Compl. ¶¶ 39–40]. Mr. McGill alleges that Mr. Patrick received these complaints but threatened him with discipline if he continued to object to his imprisonment. [*Id.* ¶ 40]. Mr. McGill's legal counsel later filed a petition for a writ of habeas corpus in the Knox County Criminal Court, [*id.* ¶ 51], which reviewed Mr. McGill's record, determined that Mr. McGill was being held on expired sentences, and ordered his immediate release, [Order for Immediate Release, doc. 25-6, at 1]. Mr. McGill asserts that he spent between three and four weeks at the Roger D. Wilson Detention Facility in unlawful detainment. [Second Am. Compl. ¶ 1].

As a result, Mr. McGill filed this action under 42 U.S.C. § 1983, alleging violations of his civil rights under the Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment. [*Id.*]. According to Mr. McGill, Mr. Patrick's decision to hold him was based on Knox County Sheriff's Office Policy 9.8, [*id.* ¶ 42], which contains procedures for the release of inmates, [*see* Policy and Procedure Manual, doc. 25-4, at 1–10]. One of these procedures reads: "Anytime there is a question regarding a release of any type, notify a Supervisor. Do not release the inmate." [*Id.* at 2]. Mr. McGill alleges that this procedure is unconstitutional, and that Defendant James "J.J." Jones ("Sheriff Jones"),

the Sheriff of Knox County, is individually liable[1] for his constitutional injuries. In particular, he alleges that Sheriff Jones is individually liable because he created and implemented Policy 9.8, [Second Am. Compl. ¶¶ 41, 43–44, 82], did not train his officers on the "constitutional constraints o[f] prisoner detention" under Policy 9.8, [*id.* ¶ 82], and knew of the unlawful detainment, [*id.* ¶¶ 34, 36]. As another basis for Sheriff Jones' individual liability, Mr. McGill maintains that Sheriff Jones is responsible not only for his unlawful detainment but also for the unlawful detainment of "others similarly situated," implicating Sheriff Jones in "a pattern of violations." [*Id.* ¶¶ 78–79]. Sheriff Jones now moves for dismissal of Mr. McGill's claims, arguing that the allegations are conclusory, that a failure to act cannot create liability under § 1983, and that the doctrine of qualified immunity protects him from Mr. McGill's allegations. [Mot. to Dismiss at 1–7].

## II. Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however, and

---

[1] The Court dismissed Mr. McGill's claims against Sheriff Jones in his official capacity because they were duplicative, [*see* Order, doc. 22, at 1–2], leaving only the claims against him in his individual capacity, which are now before the Court, [*see* Second Am. Compl. ¶ 12 (alleging that "Defendant James 'J.J.' Jones is sued in his individual capacity")].

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

Sheriff Jones argues that Mr. McGill's assertions against him warrant dismissal because they are "generalized," "conclusory," and contain "few factual allegations specific to [him]." [Mot. to Dismiss at 4]. In particular, Sheriff Jones argues Mr. McGill has failed to allege that he was personally involved in his detention. [*Id.*]. Sheriff Jones also asserts that qualified immunity shields him from Mr. McGill's allegations. [*Id.* at 5–7]. In response, Mr. McGill contends that his allegations support a supervisory theory of individual liability, which requires only an implicit authorization of the alleged unconstitutional conduct. [Pl.'s Resp. at 6–7]. As to qualified immunity, Mr. McGill invites the Court to address this issue on his pending motion for summary judgment, rather than here on the pleadings. [*Id.* at 2].

Section 1983 permits a cause of action for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. As an

4

initial matter, an individual-capacity claim is different from an official-capacity claim under § 1983. An individual-capacity claim attaches personal liability to a state official for the alleged wrongdoing, whereas an official-capacity claim attaches liability only to the municipality or government entity. *Essex v. County of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013); *see Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) ("In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent.").

An individual-capacity claim against a supervisory official cannot stand on allegations of vicarious liability—that is, liability for the failure to control the unconstitutional conduct of a subordinate, *Hays v. Jefferson County, Kentucky*, 668 F.2d 869, 872 (6th Cir. 1982)—or a failure to act, *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). Rather, a supervisory official's failure "to supervise, control, or train the offending individual" is actionable only if that official (1) "encouraged the specific incident of misconduct or in some other way directly participated in it" or (2) "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874. Without a supervisory official's personal involvement in the misconduct, "failure-to-train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the county." *Harvey v. Campbell County, Tennessee*, 453 F. App'x 557, 563 (6th Cir. 2011) (citing *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)).

The analysis of a supervisory official's individual liability must also include an inquiry into whether a causal connection exists between the supervisory official's conduct

5

and the alleged constitutional violation. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016); *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he . . . fails to do so." *City of Roseville*, 296 F.3d at 440 (quotation omitted). To be sufficient to place a supervisory official on notice, the alleged deprivation "must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id.* (quotation omitted).

Accepted as true, Mr. McGill's allegations do not state a plausible claim of individual liability against Sheriff Jones because they lack facts of personal involvement—direct or implicit—in Mr. McGill's detainment. Throughout the Complaint, Mr. McGill erects a theory of liability against Sheriff Jones based on the existence of Policy 9.8:

- "Defendant Patrick's actions and the actions of his staff at the jail were authorized, caused by and a direct result of Knox County Sheriff's Office Policy 9.8[.]" [Second Am. Compl. ¶ 42].

- "Defendants consciously and with deliberate indifference chose a policy that virtually guaranteed that unlawful detentions would occur and continue." [*Id.* ¶ 48].

- "Defendants were aware of the need for a constitutional release policy, as evinced by their statement in Policy 9.8 . . . . The entirety of the policy however, does the exact opposite." [*Id.* ¶ 64].

- "Defendant[] . . . Jones['] . . . Policy 9.8 . . . virtually guaranteed that constitutional violations would occur." [*Id.* ¶ 73].

- "Defendant[] . . . Jones['] . . . formal and informal policies . . . including the Inmate Release Policy (Policy 9.8) are the moving force behind the

6

violation of Plaintiff's rights." [*Id.* ¶ 92].[2]

A constitutional violation that arises from a policy's mere existence, however, does not trigger individual liability for a supervisor under § 1983. *See Harvey*, 453 F. App'x at 563; *see also Tillman v. Decatur County*, No. 15-01068 JDB-egb, 2015 WL 5675843, at *3 (W.D. Tenn. Sept. 25, 2015) (dismissing an individual-capacity claim against a supervisor because "Plaintiff [did] not allege either Defendant affirmatively engaged in any instruction or gave any direction to any of the deputies or jail officers involved; the policy simply existed."); *cf. Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (reversing injunctive relief under § 1983 when "no affirmative link" existed between a policy and individual misconduct because the "sole causal connection . . . was that in the absence of a change in . . . procedures, the incidents were likely to continue to occur"). In short, Mr. McGill's branding of Sheriff Jones as the architect of Policy 9.8 does not create a plausible claim of individual liability against him.

The remaining allegations are equally feeble. Mr. McGill relies on only "threadbare recitals," *Iqbal*, 556 U.S. at 678 (citation omitted), in alleging that Sheriff Jones acquiesced to the detainment through his knowledge or imputed knowledge:

- "Upon information and belief, Defendant[] Jones . . . w[as] aware of, authorized, participated in or at a minimum tacitly approved of Defendant Patrick's decision[.]" [Second Am. Compl. ¶ 34].

- "Upon information and belief, Defendant Patrick informed . . . Jones of

---

[2] Mr. McGill incorporates these same allegations into his argument against dismissal. [*See* Pl.'s Resp. at 4 ("Defendant Jones directly caused Plaintiff to be unlawfully detained by promulgating an unconstitutional policy . . . ."); *see id.* at 5 ("As the policy dictates that an inmate not be released when there is a question, it is directly responsible for delay in Plaintiff's release, and directly responsible for violating his rights.")].

7

his decision to detain Plaintiff or alternatively, Defendant[] . . . Jones learned of Plaintiff's detention through the IMS or from information posted on the jail's website[.]" [*Id.* ¶ 36].

The Court does not accept these bare-boned allegations as true. *See Iqbal*, 556 U.S. at 680–81 (analyzing a pleading under the federal analog to § 1983 and declining to accept as true the conclusory allegation that the "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [the respondent] to harsh conditions of confinement 'as a matter of policy . . . for no legitimate penological interest'"). Even if these allegations did not fail for lack of specificity, they would still not form a viable cause of action for individual liability against Sheriff Jones because they are steeped in a theory of vicarious liability—that is, they would impose liability on Sheriff Jones "without any control or direction having been exercised." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978) (citation omitted); *cf. Iqbal*, 556 U.S. at 677 ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.").

Finally, Mr. McGill's allegations of a causal connection—a link between his detainment and conduct by Sheriff Jones—are far too general to survive dismissal. Without the slightest factual enhancement, Mr. McGill claims that Sheriff Jones acquiesced to or participated in the unlawful detainment of "others similarly situated" and is therefore responsible for a "pattern" of abusive conduct. [Second Am. Compl. ¶¶ 78–79]. Based on this assertion alone, the Court cannot possibly draw a reasonable inference that Sheriff

8

Jones had notice of or had been involved in an offensive against prisoners' constitutional rights, *Iqbal*, 556 U.S. at 678—let alone one that is "obvious, flagrant, rampant, and of continued duration," *City of Roseville*, 296 F.3d at 440 (quotation omitted). *Compare* [Second Am. Compl. ¶¶ 78–79] (containing conclusory assertions of a pattern of abuse based on unspecified unlawful detainments) *with Peatross*, 818 F.3d at 242 (containing a plausible claim for a constitutional violation based on a police director's recognition of a need for change after officers had shot fifty-four people in four years and eighteen people in one year). Mr. McGill's allegations of individual-capacity liability against Sheriff Jones therefore warrant dismissal.

### IV. CONCLUSION

Failing to allege sufficient facts that implicate Sheriff Jones as a direct or indirect participant in the detainment at issue, Mr. McGill has not "nudged" his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Sheriff Jones is therefore entitled to dismissal of the individual-capacity claims against him, and the Court has no need to address whether dismissal is also warranted under the doctrine of qualified immunity. Sheriff Jones' Motion to Dismiss [doc. 14] is **GRANTED**. The Court will enter an order consistent with this opinion.

**IT IS SO ORDERED.**

ENTER:

s/ Thomas W. Phillips
United States District Judge

9